Case 1:00-cv-00961-MRB   Document 41-2   Filed 01/31/2005   Page 1 of 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ANDREA L. NGO,** | : | CASE NO. : C-1-00-961 |
| Plaintiff, | : | Judge Watson |
| vs. | : | AFFIDAVIT OF ANDREA L. NGO IN SUPPORT OF |
| **CITY OF CINCINNATI, et al.,** | : | PLAINTIFF'S MEMORANDUM IN OPPOSITION TO |
| | : | DEFENDANT'S MOTION FOR |
| Defendants. | | SUMMARY JUDGMENT |
| | : | |

STATE OF OHIO          )
                       )SS
COUNTY OF HAMILTON )

Now comes Andrea L. Ngo, affiant herein, and having been duly cautioned and sworn states the following:

1.  I am a resident of the State of Ohio and Hamilton County and currently reside at 1697 Atson Lane, Cincinnati, Ohio 45205.

2.  I am currently employed as a Laboratory Technician II in the Metropolitan Sewer District (MSD) of the City of Cincinnati. I have been employed by the City of Cincinnati since 1995.

3.  Prior to accepting the job with the City of Cincinnati, I had extensive work experience as a Research Associate and Chemist. My most notable former employment was as a research associate at Procter and Gamble for more than 13 years. I also worked as a Scientist III for the

United States Environmental Protection Agency in Cincinnati, Ohio. I was also formerly employed with Duramed Pharmaceuticals as a Chemist.

4. My educational background includes being a PhD candidate in French Literature. I was also a French and Vietnamese teacher in my native country of Vietnam.

5. Since my employment began with the City of Cincinnati in 1995, I have been the only Asian employed by the Metropolitan Sewer District in the Division of Industrial Waste Lab Section.

6. Over the past ten years, and most recently, over the past five years, I have been discriminated against due to my Vietnamese ethnicity, my gender and my age

7. This affidavit is in conjunction and in support of my December 8, 2004 deposition. I am supplementing my deposition due to several difficulties and discrepancies associated with barriers in my understanding and communication and the amount of errors I found upon my review of my deposition.

8. Since 1995, I have been qualified for the position of Chemist within MSD. I have on several occasions have been "promised" a Chemist position by the Supervising Chemist, Mr. Ty Gouda.

9. Between the years of 1996 and 2001, three separate Chemist positions became available, vacated by Carol Baum, Virgil Marcum and Matt Grannen.

10. Prior to the year 2000, there was no promotional eligible exam in place for these open Chemist's positions. I feel that during this very relevant period of time, I was the most qualified individual for the three open Chemist positions. Despite my qualifications, and the recommendations and evaluations of my supervisors, I was never offered nor was I a candidate to become a Chemist within the MSD.

11. In 2001, the Civil Service rules were changed to finally allow for a promotion eligible exam for the Chemist position. I took that test and passed the test, placing tenth on the list. By this time several years of being bypassed had taken its toll on me.

12. At the time of the examination was given, I had questions as to the validity of the examination. The majority of the questions related to plant operation, administration and very few questions related to analytical chemistry and analytical techniques. Based on my experience and knowledge as a Chemist, I know that the requirements for the Chemist position are predicated more on knowledge of analytical chemistry and analytical techniques than plant operation and administration.

13. Furthermore, the examination consisted of answers which required pencil markings. I feel that the tests were unreliable and that they were rife for alterations. Other similar tests have been found to be faulty. (See Exhibit 1)

14. I feel that I have been discriminated against by the Metropolitan Sewer District and more specifically Beverly Head. Although these were not specifically addressed in the deposition, I would like to address the following five questionable promotions at the Division of Industrial Waste over the past seven years.

    a. Mr. Jim Weast was promoted to a Manager without taking any examination. He is a high school drop out.

    b. Karl Power, a white male, with a bachelor's degree in music. He was promoted from a Lab Tech position to a Chemist without an examination.

    c. Tara Williams who only has bachelors in biology. Ms. Williams is a black female and she also was promoted from a Laboratory Technician to a Chemist without an examination.

  d. Wanda Harney has a bachelor's degree in biology. Ms. Harney, too, was promoted from a Lab Tech II position to a Chemist without taking any examination.

  e. Diane Warrington, a white female under the age of 40 who had an associate's degree in biology and no further analytical education. Despite these lesser qualifications, Ms. Warrington was also promoted to the Chemist position.

15. Another position for which I could have been promoted is a Laboratory Technician III. This position is a promotion and is also covered under the Promotional Eligible Examination system of City of Cincinnati (See Exhibit 2). On or about October 17, 1999, I past and was placed third on the promotional eligible examination list. Numbers 1 and 2 above me were promoted to Lab Tech III and for a period of about 2 years, I was the next Lab Tech II to be placed in an available Lab Tech III position. Despite offerings, Ms. Head intentionally took more than seven months from March 28, 2001 to October 17, 2001, the date my Lab Tech III eligibility expires, to interview and promotes a Lab Tech III to a Chemist position.

16. The Lab Tech III to Chemist promotion would open an available Lab Tech III position for me to fill. Instead of making the placement to the available Chemist position, Ms. Head and the City of Cincinnati knowingly, and in a discriminatory fashion, did not place any individuals in the available Chemist position, therefore, closing me from a potentially available Lab Tech III position and the additional salary which would go with it.

17. In addition to the discriminatory actions of the City in blocking promotional opportunities to me, I was also discriminated against by being given excessively large work loads, when others similarly situated employees were given much lighter work loads. I was assigned to one part of the nutrients to analyze for nitrite, nitrate, and ammonia. I was also asked to do all nutrient

duties and analysis for the various chemicals. I was also required to help another lab do different tests. I was even asked to do receptionist work on several occasions. Finally, I was often asked by my supervisor to trouble shoot analytical problems, fix equipment broken by her, set up the method when needed and to do additional training.

18. I am currently doing the job of at least two employees, a Chemist and a Lab Tech. Younger white females have been afforded the opportunity to work much lighter work loads.

19. Another instance of discrimination against me by the City was receiving absent without leaves (AWOL) for periods of illness which should have been documented as sick with pays (SWP). (See Exhibit 3)

20. On each of these occasions, as evidence by the attached documentation, I was given doctors excuses which were approved by my supervisors and/or managers.

21. Another example of discrimination against me was the defendants removal of my plants from my work place. Despite explicit acceptance of plants in the lab by the Ohio Environmental Protection Agency, my plants were removed without my knowledge and without my consent by representatives of the Defendants. This removal was done on a vacation day I had planned. I later found out that Ms. Head removed the plants herself and when I found out about them many of the plants had died from the lack of water and light for several weeks. (See Exhibit 4)

22. Similarly situated laboratory technicians in the MSD have been allowed to maintain plants and flowers in their work space without reprisal.

23. Yet another example of discrimination towards me by the Defendants comes in the form of inadequate and inappropriate work equipment. (See Exhibit 5) Namely, my previous computer was very old and very slow. I was unable to adequately perform my tests and analyses and my work product was slow dramatically. In an effort to improve my output and to improve my performance, I

requested a new computer to replace my old ineffective computer. A replacement computer was delivered and arrived to my desk. The computer was put on my lab bench and was ready to be installed by Mr. Mike Nally, the Computer Specialist for MSD. However, prior to it being installed, Defendant Head decided to give another technician Tim O'Kane, a white male my replacement computer. I did not receive a proper replacement for another three years. However, this computer replacement was a used computer belonging to Nancy Weinish, a white female under the age of 40.

24. The similarly situated individuals who did receive computer upgrades, did not require their usage. Mr. O'Kane performs only about 100 samples per month and Ms. Weinish only prepares samples, she does not do any analyses. I on the other hand, perform approximately 1000 samples per month which generate 4,000 to 5,000 data points to be entered in to the lab information system.

25. Further, until November, 2004, all of my Microsoft word files were erased by a computer bug that was brought to the attention of the administration. I have also been discriminated against due to humiliation at the hands of Defendants. (Se Exhibit 6).

26. Instead of letting me go back to work in my lab where I can do my regular analyses, Ms. Head put me in the clerical area. My job was reduced to pulling out old files dated from 1948 to present, removed staples and shredded all files of before 1999. I shredded tons of papers.

27. There was an empty office but they did not let me use it. I just had a countertop, full of old files and sit by the hallway where people passing by could see my shredding papers. Ms. Head just wanted to humiliate me.

28. I had to work in the clerical area for about 4 months even all my doctors, Drs. Raneses, Anjak, Murthy, Michaels and Mether of the EHS wrote I could return to work in the lab but Ms. Head still found the physical limitations unclear. She requested Dr. Mether to clarify them.

29. Based on the above, I would like the Court to consider the discriminatory treatment I have received at the hands of the Defendants.

FUIRTHER AFFIANT SAYETH NAUGHT.

_____
Andrea L. Ngo

Sworn to and subscribed in my presence this 31st day of January, 2005.

_____
Notary Public
Jennifer M. Junius
My Comm. Exp. 1-28-08