UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Andrea L. Ngo,

       Plaintiff,

     v.                            Case No. 1:00cv961

City of Cincinnati, *et al.*,            Judge Michael H. Watson

       Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

      This matter is before the Court upon Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Doc. 24) and Motion for Summary Judgment. (Doc. 39) Plaintiff has filed Responses (Doc. 29, 41) and Defendants have filed Replies. (Doc. 30, 41) This matter is now ripe for the Court's review of both motions. For the reasons stated herein, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part; and Defendants' Motion for Summary Judgment is GRANTED on Plaintiff's remaining claims.

**I.    FACTUAL BACKGROUND**

      Plaintiff originally filed this action on November 15, 2000. (Doc. 1) Plaintiff's Second Amended Complaint was filed on March 22, 2004. (Doc. 26) Plaintiff claims: (1) race, national origin, and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*; (2) race, national origin and gender discrimination in violation of Ohio Rev. Code §§ 4112.02 and 4112.99; (3) age discrimination in violation of

the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"); (4) age discrimination in violation of Ohio Rev. Code §§ 4112.02 and 4112.14; (5) retaliation; and (6) intentional infliction of emotional distress. In the introduction of her Complaint, Plaintiff also alleges a violation of 42 U.S.C. § 1983. The following parties are named as Defendants in the Second Amended Complaint: (1) the City of Cincinnati; (2) the Hamilton County Board of County Commissioners; (3) Beverly Head, Superintendent of the Industrial Waste Division of the Metropolitan Sewer District;[1] and (4) John or Jane Does 1-8, who are employees, agents, and/or officials of the City.

Plaintiff Ngo is a seventy-year old, Asian-American female. (Doc. 40, Ngo Depo. at 7) Ngo has been employed by the City in the Metropolitan Sewer District since 1995. (Doc. 41, Ngo Aff. ¶ 2) Ngo is currently employed as a Laboratory Technician II ("Lab Tech II"). (Id.)[2] In this position, Ngo's immediate supervisor is Tara Williams, but her ultimate supervisor is Defendant Beverly Head. (Doc. 26, ¶ 13)

In her Second Amended Complaint, Ngo describes several incidents of discrimination. On May 25, 2000, Ngo was authorized to use two days of "Sick with Pay" time. (Id. ¶ 13) Nevertheless, the City refused Ngo's doctor's note and charged her with being "Absent Without Leave" or "AWOL." (Id.) Ngo claims that other similarly situated Caucasian and male employees were not disciplined in such a manner. (Id. ¶ 15) Next, Ngo alleges that she has sought promotions to available Chemist and Laboratory

---

[1]Defendant Head was added as a party in the Second Amended Complaint.

[2]In the opening paragraphs of Plaintiff's Response, Plaintiff makes the statement that "[t]here is both direct evidence and circumstantial evidence that Plaintiff's discharge was based on her race, ethnicity, age and gender." This reference to a "discharge" is apparently an error by counsel because there is nothing in the record which indicated that Plaintiff is no longer employed by the City.

Technician III positions.  (Id. ¶ 16)  Ngo alleges that even though she was qualified for the positions, the positions were filled by Caucasian and/or male employees through a policy of using "Exceptional Appointments."  (Id. ¶ 17)  Ngo also alleges that she had plants removed from her desk while she was on vacation, had her time cards altered by a fellow employee, and has been harassed and intimidated.  (Id. ¶ 21)  Ngo also claims that she was provided with inadequate computer equipment.  (Ngo Aff. ¶ 23)  In addition, Tara Williams issued a written reprimand to Ngo for failing to remove her plants from the bench in her laboratory.  (Ngo Depo., Ex. 3)

On August 10, 2000, Ngo filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission.  (Id., Ex. A)  On August 25, 2000, the EEOC issued a right to sue letter to Ngo.

## II.    ARGUMENTS OF THE PARTIES

Defendants state that Ngo has not alleged facts which show Defendants discriminated against her.  Defendants argue that instead, Ngo has only made summary and conclusory statements.  Defendants argue further that (1) Ngo's claim of retaliation cannot stand because it was not included in the charge filed with the EEOC; (2) Defendant Hamilton County Board of County Commissioners is not Ngo's employer and was not named in the EEOC charge, and therefore should be dismissed; (3) Ngo's claim under section 1983 cannot stand because there are no allegations to support this claim, and a city cannot be held liable under a theory of *respondeat superior*; (4) Defendant Head and the unnamed "Does" are entitled to qualified immunity against Ngo's section 1983 claim; (5) Ngo's section 1983 claim against Defendant Head is barred by the statute of limitations; (6) Defendant Head is not an employer and therefore cannot be held individually liable

3

under Title VII; and (7) allegations of not being promoted or plants being removed do not

rise to the level of outrageous behavior necessary to support a claim of intentional infliction

of emotional distress.  In addition, Defendants argue that the unnamed "Does" should be

dismissed because service has not been accomplished within the 120-day period found

in Fed. R. Civ. P. 4(m).

Ngo responds that there are allegations in the Complaint and the EEOC charge,

which is attached to the Complaint, which make out claims of discrimination under Title VII

and the ADEA.    Ngo argues that there is direct and circumstantial evidence of

discrimination.  Ngo also argues that while the box for "retaliation" on the EEOC Charge

of Discrimination form is not checked, there are specific allegations of retaliation contained

within the charge.

## III.    ANALYSIS

### A.    Applicable Standards of Review.

#### 1.    *Motion to Dismiss.*

Defendants' Motion to Dismiss is made pursuant to both subsection (1) and (6) of

Federal Rule 12(b).  Because a motion under Rule 12(b)(1) questions a district court's

jurisdiction, it must be considered before a motion brought under Rule 12(b)(6).  *Moir v.*

*Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir.1990).  In the

Sixth Circuit, there are two standards of dismissal under Rule 12(b)(1), depending upon

whether the movant makes a facial or factual attack on the complaint.  *Ohio Nat'l Life Ins.*

*Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990).  A facial attack merely questions

the sufficiency of the pleading.  *Id.*  In reviewing a facial attack, the district court is to apply

the same standard applicable to Rule 12(b)(6) motions.  *Id.*  In contrast, a factual attack

is "a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994). Here, Defendants have made a facial attack to the sufficiency of Plaintiff's pleadings because their motion does not dispute the facts that give rise to this Court's jurisdiction. Therefore, the Court must apply the same standard that is applied under a Rule 12(b)(6) motion to dismiss.

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir.1987) (en banc). In applying this standard, the district court must presume all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993).

### 2.    *Motion for Summary Judgment.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the

5

evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

The Court will address each of Defendants' Motions individually.

    B.    <u>Defendants' Motion to Dismiss</u>.

        1.    *Plaintiff's discrimination claims*.

Defendants argue that Plaintiff has failed to plead the necessary elements of a *prima facie* case under Title VII and has only made conclusory statements regarding violations of the ADEA and Ohio Rev. Code §§ 4112.02 and 4112.14.

In *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002), the Supreme Court made it clear that the requirements for establishing a *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) do not also apply to the pleading standard that a plaintiff must satisfy in order to survive a motion to dismiss. *Id.* at 511. The Court explained that the *prima facie* case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement. *Id.* at 510. The Court also explained that under a notice pleading system it would not be appropriate to require a plaintiff to plead facts establishing a *prima facie* case because the *McDonnell Douglas* framework does not apply in every employment discrimination case. *Id.* at 511. The Court cited an example where plaintiff is able to produce direct evidence of discrimination and could prevail without proving all the elements of a *prima facie* case. *Id.* The Court also noted that a heightened pleading standard in employment discrimination cases conflicts with the notice pleading standard in Federal Rule of Civil Procedure 8(a)(2). *Id.* at 998. The Court concluded that the allegations in the

complaint stated claims upon which relief could be granted under Title VII and the ADEA. *Id.* at 999.

Here, Ngo's Complaint detailed the events leading to her adverse employment action, provided relevant dates, and included the ages, gender, national origin, and race of the relevant persons involved. Based on the standard applicable to a motion made pursuant to 12(b)(6), these allegations state claims upon which relief could be granted under Title VII and the ADEA. Therefore, Ngo may proceed with her claims of race, national origin, gender, and age discrimination under Title VII and the ADEA.

Finally, the Ohio Supreme Court has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981). As a result, Ngo may also proceed with her claims under Ohio Rev. Code §§ 4112.02 and 4112.14.

> ### 2.    *Plaintiff's EEOC charge.*

Defendants argue that Ngo's EEOC charge did not include a claim of retaliation, and therefore Ngo has not exhausted her administrative remedies for this claim.

In *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828 (6th Cir. 1999), the Sixth Circuit held that an employee's failure to check box marked "retaliation" on the EEOC's charge form did not preclude her from bringing a retaliation claim in federal court. The court recognized that earlier circuit precedent held that a district court's jurisdiction is limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. *Id.* at 832, *citing, Ang v. Procter & Gamble Co.*, 932 F.2d 540 (6th Cir. 1991). However, the court noted that in the case before it, the employee alleged facts to

7

the EEOC, via her affidavit, which clearly included retaliation allegations and would have prompted an investigation into retaliation. *Id.* at 832-33. In addition, the court stated that retaliation naturally grows out of any underlying substantive discrimination charge, making a retaliation claim foreseeable to the defendants. *Id.* at 833.

Here, Ngo does not state in her affidavit that she made complaints to Defendants regarding her alleged discriminatory treatment. Therefore, Ngo did not relate facts which would have prompted the EEOC to investigate a retaliation claim.[3] However, as the court recognized in *Duggins*, Ngo could make out a claim based on retaliation stemming from the filing of the EEOC charge itself. These acts of retaliation would have necessarily occurred after August 10, 2000: the date Ngo filed her EEOC charge. Therefore, Ngo's retaliation claims under state and federal law are not dismissed, but are limited to acts which occurred after August 10, 2000.

3.    *The Hamilton County Board of County Commissioners.*

Defendants argue that the Hamilton County Board of County Commissioners ("the Board") should be dismissed because it is not Ngo's employer and was not named in Ngo's EEOC charge. Ngo does not address this issue directly in her Response to Defendants' Motion to Dismiss, but her Complaint includes an allegation that "Defendant City of Cincinnati has, pursuant to a contract with Defendant Board, employed Plaintiff . . ." (Doc. 26, ¶ 12)

---

[3]In her Response to Defendant's motion, Ngo argues that there was an incident involving a new computer which could be construed as an act of retaliation for Ngo's failure to remove her plants. However, Ngo's retaliation claims must be based on the protected exercise of her rights under Title VII or Ohio Rev. Code § 4112.01 or § 4112.07.

"It is well settled that a party not named in an EEOC charge may not be sued under Title VII unless there is a clear identity of interest between it and a party named in the EEOC charge or it has unfairly prevented the filing of an EEOC charge." *Jones v. Truck Drivers Local Union No. 299*, 748 F.2d 1083, 1086 (6th Cir. 1984).

The Sixth Circuit has explained that the purpose of requiring a plaintiff to name a Title VII defendant in a charge filed with the EEOC is to notify the defendant of discrimination claim alleged against him or her and to enable the defendant to participate in conciliation efforts directed at securing voluntary compliance with the Civil Rights Act. *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir. 1987). Courts have held that these same policy reasons apply to charges made based on age discrimination under the ADEA. *See Wasilchuk v. Harvey's Wagon Wheel, Inc.*, 610 F. Supp. 206 (D. Nev. 1985); *Rio v. Presbyterian Hosp. in City of New York*, 561 F. Supp. 325 (S.D.N.Y. 1983).

Here, there has been no evidence that the Board has unfairly prevented the filing of an EEOC charge against it. Moreover, there is no clear identity of interest between the Board and the City. While Ohio Rev. Code §§ 6117.04 and 6117.05(B) make it possible for a county board to convey by agreement the responsibility of managing a sewer district facility to a city, this does not necessarily mean that employees of the metropolitan sewer district are employees of the county. Plaintiff has not identified any clear identity of interest between Hamilton County or its Board and the City. Therefore Ngo's Title VII and ADEA claims against the Board are hereby DISMISSED.

Moreover, the record shows that the County is not Ngo's employer. In two other similar cases filed by Ngo's counsel alleging that the MSD impermissibly discriminated against its employees, the City and County determined that based upon the contractual

9

relationship between them in operating the MSD, the City was the real party in interest in

the litigation. (See Doc. 19, at 2)  Ngo's failure to address this issue in her Response leads

the Court to believe that she concedes as much here.  Therefore all claims against the

Board are hereby DISMISSED, and the Board is DISMISSED as a party.

>   4.   *Section 1983.*

Defendants argue that there are no allegations to support a section 1983 claim, and

a city cannot be held liable under a theory of *respondeat superior*.

Section 1983 creates no substantive rights, but merely provides remedies for

deprivations of rights established e lsewhere.  *Tuttle v. Oklahoma City*, 471 U.S. 808

(1985).  Ngo has alleged a section 1983 claim in connection with a Title VII discrimination

claim.  As the Sixth Circuit has explained:

> "the showing a plaintiff must make to recover on a disparate treatment claim
> under Title VII mirrors that which must be made to recover on an equal
> protection claim under section § 1983." *Gutzwiller v. Fenik*, 860 F.2d 1317,
> 1325 (6th Cir. 1988) (citing Kitchen v. Chippewa Valley Schs., 825 F.2d
> 1004, 1011 (6th Cir. 1987)); *Daniels v. Bd. of Educ.*, 805 F.2d 203, 207 (6th
> Cir. 1986); *Grano v. Dep't of Dev.*, 637 F.2d 1073, 1081-82 (6th Cir. 1980);
> *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003) ("To
> prove a violation of the equal protection clause under § 1983, [a plaintiff]
> must prove the same elements as are required to establish a disparate
> treatment claim under Title VII.") (quotation and citation omitted).

*Smith v. Salem, Ohio*, 378 F.3d 566, 577 (6th Cir. 2004).  As discussed above, Ngo has

alleged facts sufficient to support a claim of disparate treatment under Title VII.  Therefore,

these allegations also state an equal protection claim upon which relief could be granted

under section 1983.

However, as Defendants have noted, a municipality cannot be sued on a

*respondeat superior* basis.  *Monell v. Department of Social Servs.*, 436 U.S. 658, 691

(1978).  Instead, municipal liability attaches only where a plaintiff's injury is the result of an

official custom or policy of the city.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479

(1986).  As this Court has explained:

> In other words, a plaintiff must show that the government entity itself is the
> wrongdoer.  *Collins v. Harker Heights*, 503 U.S. 115, 122, 112 S.Ct. 1061,
> 117 L.Ed.2d 261 (1992).  Governmental defendants may not be found liable
> unless a plaintiff can establish that an officially executed policy, or the
> tolerance of a custom, leads to, causes, or results in the deprivation of a
> constitutionally protected right.  *Id.*  An act performed pursuant to a "custom"
> not formally approved by an appropriate decision maker, may subject a
> government entity to liability on the theory that the relevant practice is so
> widespread as to have the force of law.  *Board of County Comm'rs of Bryan
> County v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626
> (1997).  To show the existence of an offending custom or policy, plaintiffs
> must adduce specific facts supporting their claim; conclusory allegations are
> insufficient.  *Taylor v. Canton Police Dep't*, 544 F.Supp. 783 (N.D.Ohio
> 1982).

*Games Galore of Ohio, Inc. v. Masminster*, 154 F.Supp.2d 1292, 1300 (S.D.Ohio 2001).

Here, Ngo alleges that the City maintains a policy of "filling open Laboratory

Technician III and Chemist positions via 'Exceptional Appointments.' "  Ngo alleges that as

a result of this policy, Ngo was denied promotions in favor of Caucasian males.  Based on

these allegations, Ngo has alleged facts which could give rise to municipal liability.

Therefore, Defendant's Motion to Dismiss Ngo's section 1983 claim against the City is

hereby DENIED.

          5.    *Qualified Immunity.*

Defendants argue that Head and the unnamed "Does" are entitled to qualified

immunity against Ngo's section 1983 claim.

Qualified immunity will generally shield government officials from individual liability

if their conduct "does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *citing*, *Procunier v. Navarette*, 434 U.S. 555, 565 (1978). Qualified immunity involves a two-step inquiry:

> First, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. If the court finds a constitutional violation, it must then consider whether the violation involved " 'clearly established constitutional rights of which a reasonable person would have known.' "

*Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002), *quoting*, *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996).

A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred. *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir.1988). "Although the absence of a case on point does not necessarily endow a public official with public immunity, 'when this court can uncover only some generally applicable principle, its specific application to the relevant controversy must again have been 'clearly foreshadowed by applicable direct authority.' " *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999), *quoting*, *Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir. 1998). Once a court finds that the right is clearly established, the court must next decide "whether a reasonable person in the defendant's position would have known that his or her actions violated clearly established rights." *Id.* at 1008.

As discussed above, Ngo has made out an equal protection claim based on discriminatory treatment. The Equal Protection Clause provides that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S.

432, 439 (1985). Defendants do not argue that discrimination in employment does not violate the Equal Protection Clause or that a reasonable person in the position of Defendant Head or the unnamed Does would not have known that Ngo had a right to not be subjected to discrimination. Therefore, Defendants' Motion to Dismiss the claims against Defendant Head and the unnamed Does based on qualified immunity is DENIED.

6.    *Individual liability of Defendant Head under Title VII.*

Defendants argue that Defendant Head is not an employer and therefore cannot be held individually liable under Title VII.

Title VII provides that "it shall be an unlawful employment practice for an employer" to discriminate on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a).    "Employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees . . ." 42 U.S.C. § 2000e(b).

In *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997), the Sixth Circuit held that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII."    The court noted that the ADEA defined "employer" in essentially the same way.    *Id*. at 404 n.6.    Therefore Defendant Head cannot be held individually liable for Ngo's claims under Title VII and the ADEA.    Therefore, the Title VII and ADEA claims against Defendant Head are hereby DISMISSED.

7.    *Statute of Limitations.*

Defendants argue that Ngo's section 1983 claim against Defendant Head is barred by the statute of limitations.    Defendants maintain that the most recent denial of promotion alleged was on October 3, 1999.

13

In *Wilson v. Garcia*, 471 U.S. 261, 276-280 (1985), the Supreme Court held that the appropriate statute of limitations to be applied in all section 1983 actions is the state statute of limitations governing actions for personal injury. Subsequently, in *Kuhnle Brothers, Inc., v. County of Geauga*, 103 F.3d 516, 519 (6th Cir.1997), the Sixth Circuit decided that the limitations period for section 1983 actions arising in Ohio is the two-year period found in Ohio Rev. Code § 2305.10.

Ngo's original Complaint was filed on November 15, 2000. Ngo's claims against Head were first brought in Ngo's Second Amended Complaint, which was filed on March 26, 2004.[4] Because Ngo's First Amended Complaint was also filed outside of the statute of limitations, showing a relation back to the First Amended Complaint does not save Ngo's claims against Head. *Cf. Miles v. Whaley*, 155 F.R.D. 684, 686 (M.D. Ala. 1994) (second amended complaint, which sought to correct misidentification of party timely

---

[4]This case presents somewhat of an unusual situation due to the slow progress of this case. On March 22, 2001, this Court issued a show cause order, ordering Ngo to show cause on or before April 9, 2001 why the case should not be dismissed for failure of service. (Doc. 2) Ngo responded and filed waivers of service by the Board and the City. (Docs. 3, 4, 5) However, there is some question whether these waivers were properly executed. (See Doc. 19, at 3) No other activity occurred until January 18, 2002, when the Court directed Ngo to commence default proceedings against the Board and the City within thirty days. (Doc. 6) Ngo filed motions requesting the entry of default and default judgment. (Docs. 7, 9) On March 21, 2002, the Court granted the Ngo's motions and dismissed the case. (Doc. 10) However, in an order entered on October 17, 2003 the Court set aside the judgment and granted the Defendants relief from judgment. (Doc. 19) The case was reopened on that same date.

No other activity occurred until January 29, 2004 when Ngo filed her First Amended Complaint. (Doc. 21) Defendants filed their Motion to Dismiss almost two months later on March 10, 2004. Pursuant to a status conference held on March 11, 2004, the Court granted leave for Ngo to file her Second Amended Complaint on or before March 26, 2004. (Doc. 25) Therefore, even though the Second Amended Complaint was filed more than three years after the original Complaint, it was timely filed.

added by first amended complaint, relates back to first amended complaint).  Therefore,

Ngo must show that her claims against Head relate back to the original Complaint.

Under Rule 15(c) of the Federal Rules of Civil Procedure, an amendment of a

pleading relates back to the date of the original pleading when:

> (1) relation back is permitted by the law that provides the statute of
> limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the
> conduct, transaction, or occurrence set forth or attempted to be set forth in
> the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against
> whom a claim is asserted if the foregoing provision (2) is satisfied and, within
> the period provided by Rule 4(m) for service of the summons and complaint,
> the party to be brought in by amendment (A) has received such notice of the
> institution of the action that the party will not be prejudiced in maintaining a
> defense on the merits, and (B) knew or should have known that, but for a
> mistake concerning the identity of the proper party, the action would have
> been brought against the party.

Ngo's Second Amended Complaint cannot relate back under Rule 15(c)(1) because

Ohio Revised Code § 2305.10 does not contain a specific relation back provision.  *Oros*

*v. Hull & Assocs.*, 217 F.R.D. 401, 405 (N.D. Ohio 2003); *see also Lovelace v. O'Hara*, 985

F.2d 847, 851-52 (6th Cir. 1993) (plaintiff cannot use section 15(c)(1) relation back

principles to save a section 1983 claim because while Kentucky law provided the statute

of limitations, the particular statute in question contained no specific provision for relation

back).

Section (c)(2) is not applicable because Ngo has not added any claims to the suit.

Ngo is adding a party against whom some of the claims set forth in the original complaint

are asserted.

Finally, Section 15(c)(3) is not applicable. Ngo's amendment is not "changing the party or the naming of the party," but is adding Head as a new party. "As a general rule, an amendment pursuant to Rule 15, Federal Rules of Civil Procedure, relates back only to the matters relating to the original parties of the complaint, or to correct a misnomer or a misdescription of defendant, and not to add or substitute a new party defendant."

Even if section 15(c)(3) is somehow applicable, the amendment naming Defendant Head does not relate back to the original Complaint. Under Section 15(c)(3), there are two requirements. First, the amendment must meet the requirement from section (c)(2) that the claims asserted must arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. Ngo has met this requirement. The second requirement is two-fold. Under section 15(c)(3)(A), the party to be brought in by the amendment must receive notice of the action within the period provided by Rule 4(m).[5] The Sixth Circuit has held that the notice required by Rule 15(c)(3)(A) can be either actual or constructive. *Berndt v. Tennessee*, 796 F.2d 879, 884 (6th Cir.1986). In *Berndt*, the Court announced a nonexhaustive list of factors to be considered by a district court in determining whether a defendant received sufficient notice. *Id*. However, this analysis is

---

[5]Rule 4(m) provides:

Time Limit for Service. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

not necessary in this case.[6]  Under part "B" of Rule 15(c)(3), there must be a showing that the new party "knew or should have known that, *but for a mistake* concerning the identity of the proper party, the action would have been brought against the party."  The Sixth Circuit has held that "new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)(3)(B).  *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996), *cert. denied*, 519 U.S. 821 (1996).

Because Ngo has failed to raise any mistake, or for that matter, address the issue of the statute of limitations at all in her Response to Defendants' Motion to Dismiss, the Court can only assume that Ngo concedes that the amendment adding Head as a party does not relate back to the original Complaint.[7]  Ngo clearly knew Head's identity when she filed her original Complaint, as evidenced by Ngo's naming of Head in her EEOC affidavit attached to the Complaint.  Therefore, Defendants' motion to dismiss Ngo's Section 1983 claim against Defendant Head based on the statute of limitations will be GRANTED.

Based on the Court's other rulings in this Memorandum Opinion and Order, the only remaining claims against Defendant Head are those based on section 4112.  In Ohio,

---

[6]In her Response, Ngo makes no attempt to address the statute of limitations issue.  However, based on the Court's review of the record, Ngo could have fairly argued that Head had constructive notice of the claims against her.  In the original Complaint, Plaintiff states that Beverly Head is her ultimate supervisor.  Head is also mentioned in Ngo's affidavit attached to her EEOC complaint.  Head is an employee of the City and she is represented by the same attorney as the City.

[7]The Court's opinion may have been different if Ngo had alleged a continuing violation on the part of Head.  However, the Second Amended Complaint does not allege any continuing violations or any new violations from that of the EEOC charge, the original Complaint, or the First Amended Complaint.  The most recent incident alleged in the Second Amended Complaint is the incident where Ngo was charged with being absent without leave, which occurred in May of 2000.

supervisors and managers may be held personally liable for unlawful discriminatory acts committed in violation of section 4112. *Genaro v. Central Transport, Inc.*, 703 N.E.2d 782 (1999). An action based on Ohio Revised Code section 4112.99 is subject to the six-year statute of limitations set forth in R.C. 2305.07. *Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.*, 638 N.E.2d 991, 997 (Ohio 1994). Likewise, an action for age discrimination under Ohio Revised Code section 4112.14 is also subject to a six-year statute of limitations. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 518 (6th Cir. 2001). Therefore, these remaining state law claims against Head are not barred by the statute of limitations.

> 8. *Emotional Distress.*

Defendants argue that Ngo's allegations of not being promoted or plants being removed do not rise to the level of outrageous behavior necessary to support a claim of intentional infliction of emotional distress.

Under Ohio law, " '[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.' " *Yeager v. Local Union 20*, 453 N.E.2d 666 (1983) (citing Restatement (Second) of Torts 77 § 46(1) (1965)). As this Court recognized in *White v. Honda of America Mfg., Inc.*, 191 F.Supp.2d 933, 955 (S.D. Ohio 2002), both the Ohio Supreme Court in *Yeager* and the Sixth Circuit in *Polk v. Yellow Freight System*, 801 F.2d 190 (1986), have adopted the standard set forth in comment d to Section 46 of the Second Restatement of Torts for determining whether the "extreme and outrageous" requirement has been met:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of

aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an inflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

There is nothing in Ngo's Complaint which meets the requirement of "extreme and outrageous" conduct. The Complaint states that Ngo was wrongly charged with being absent without leave; she was denied certain promotions; her plants were removed while she was on vacation; and her time cards were altered by fellow employees. While these facts may be able to support Ngo's discrimination claims, they do not rise to the level of "extreme and outrageous conduct" without proof of something more. "If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999). Therefore, Ngo's claim of intentional infliction of emotional distress is hereby DISMISSED.

### 9. *Service upon unnamed "Does."*

Defendants argue in their Reply that the unnamed "Does" should be dismissed because service has not been accomplished within the 120-day period found in Fed. R. Civ. P. 4(m). The Second Amended Complaint was filed on March 22, 2004. To date, the

record does not show that service has been accomplished. Therefore, the John and Jane Doe defendants are hereby DISMISSED under Fed R. Civ. P. 4(m) for failure to serve summons and complaint on them within 120 days after the Second Amended Complaint was filed.[8]

C.    Defendants' Motion for Summary Judgment.

Ngo's remaining claims are as follows: (1) a section 1983 claim against the City; (2) a Title VII claim against the City; (3) an ADEA claim against the City; (4) claims of age, race, national origin and gender discrimination under Ohio Rev. Code §§ 4112.02, 4112.14 and 4112.99 against the City and Defendant Head; and (5) claims of retaliation based on events occurring after August 10, 2000.

1.    *Title VII claim against the City*.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Ngo's claims under Title VII are based on race, national origin, and gender discrimination.

In a case alleging employment discrimination in violation of Title VII, a plaintiff can withstand a motion for summary judgment either by presenting direct evidence of

---

[8]Moreover, it would be difficult for Plaintiff to avoid the applicable statutes of limitations. Under Rule 15(c)(3)(B), an amended complaint that adds a new defendant relates back to the original complaint only if the newly-named defendant "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [him]." The Sixth Circuit has held that this requirement is not satisfied where the caption of an original complaint refers to "unknown police officers" and, after the expiration of the applicable limitations period, an amended complaint specifically names those officers. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir.), *cert. denied*, 519 U.S. 821 (1996).

discrimination or circumstantial evidence from which a jury may infer a discriminatory motive. *Rallins v. Ohio State University*, 191 F.Supp.2d 920, 928 (S.D. Ohio 2002), *citing*, *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348-49 (6th Cir.1997). Ngo maintains that she has presented both direct and circumstantial evidence of discrimination.

"In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Examples of direct evidence are a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000), *citing*, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) and *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379-80 (6th Cir.1993). As direct evidence of discrimination, Ngo states: ". . . the City treated Plaintiff differently because of her gender. Routinely, Defendant was given much heavier work loads, substandard equipment and denied warranted promotional opportunities, all due to her national origin and age." (Doc. 41) This is not sufficient evidence of direct discrimination. Moreover, Ngo testified that she was never the subject of slurs or negative comments regarding her gender or nationality. (Ngo Depo. at 84)

Where no direct evidence of discrimination exists, a claim of employment discrimination is to be analyzed using the burden-shifting approach first announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). A plaintiff has the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* at 802. To establish a *prima facie* case of discrimination under Title VII, a plaintiff

21

generally must show that: (1) he or she is a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position in question; and (4) he or she was treated differently from similarly situated individuals outside of his protected class. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004), *citing, Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).

If the plaintiff succeeds in establishing a *prima facie* case, an inference of discrimination arises, and the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). If the defendant articulates a nondiscriminatory reason for its actions, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons put forth by the defendant were not its true reasons but were a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse action, or (3) the proffered reason was insufficient to motivate the adverse action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253.

Defendants concede that Ngo, who is a female of Vietnamese nationality, can show that she is a member of a protected class. However, Defendants argue that Ngo's allegations that she has been disciplined for having plants at work, being marked AWOL, not getting new computer equipment, and having a lower performance appraisal, do not rise to the level of an adverse employment action.

An adverse employment action has been defined as a "materially adverse change in the terms and conditions of [plaintiff's] employment." *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir.1999). A "mere inconvenience or an alteration of job responsibilities" or a "bruised ego" is not enough to constitute an adverse employment action. *White v. Burlington Northern & Santa Fe R. Co.,* 364 F.3d 789, 797 (6th Cir. 2004). Examples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 575-76 (6th Cir. 2004), *citing, Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *White*, 364 F.3d at 798. The Sixth Circuit has explained: "If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure." *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999).

While Ngo received a written reprimand for her failure to remove her plants from the countertops in her lab, Ngo testified that she did not suffer a loss in pay as a result. (Ngo Depo. at 33-34, Ex. 3) Nevertheless, Ngo testified that as a result of her reprimand, in a 2000 job appraisal, she was rated "needs improvement" in the area of following directives. (Id. at 78) Yet, Ngo stated that her overall rating was "meets expectations," and her pay was not effected. (Id. at 79) Similarly, Ngo testified that while there were "unauthorized" changes made to her time cards, the problems were rectified, and she did not suffer any loss in pay. (Id. at 61-62) Ngo also testified that she requested that her computer be updated, and a replacement arrived. (Id. at 70) Ngo explained that before this computer could be installed, Defendant Head gave the computer to another Technician, Tim O'Kane.

23

(Id. at 71)  However, Ngo stated that her computer was eventually replaced, and even though it was not new, it was adequate for her to perform her work.  (Id. at 73-74)  Ngo also stated that after her charge of discrimination was filed, her printer was replaced.  (Id. at 68)  While Ngo was charged with being AWOL on several occasions for failing to submit doctor's notes, these AWOL designations were changed to "Sick With Pay" ("SWP") after Ngo brought in a note from her doctor.  (Ngo Aff. Ex. 3)  Finally, Ngo maintains that she has been given an excessively large work load compared to other similarly situated employees.  (Id. ¶ 17)  However, Ngo recognized that there was a reduction in staff, and all employees in the Lab Tech II position were required to do more work.  (Ngo Depo. at 75)  Moreover, Ngo testified that she is able to do her job within the forty hours she is scheduled to work each week.  (Id. at 74)

These incidents do not rise to the level of an adverse employment action, and therefore cannot form the basis of Ngo's Title VII claim.

However, Defendants state that by not being promoted, it is arguable that Ngo has suffered an adverse employment action.  Ngo maintains that since 1995 she has been qualified for the position of Chemist.  (Ngo Aff. ¶ 8)  Ngo explains that between 1996 and 2001, three Chemist positions became available, but she was never offered one of these positions.  (Id. ¶ 10)  Ngo states that in 2001, the Civil Service Rules were changed to allow for a promotion eligible exam for the Chemist position.  (Id. ¶ 11)[9]  Ngo placed tenth out of the ten applicants who took the test.  (Id., Ex. 2)

---

[9]It appears that Ngo was one of the main proponents of this change.  (Ngo Aff., Ex. 4)

Defendants state that the Civil Service Rules contain a provision known as the "Rule of Three." Defendants explain that under this rule, only the top three employees from the eligible list are to be certified to be considered for a position. (Doc. 39, Beverly Head Aff. ¶ 7) Defendants state that Ngo was not promoted to the Chemist position due to a legitimate, non-discriminatory reason: the superior qualifications of other applicants.

Ngo responds by questioning the substance of the exam and whether her answers, which were recorded in pencil, were altered. (Ngo Aff. ¶ 12, 13) In support of her suspicions, Ngo cites to the "Civil Service Commission Minutes" from December 16, 2004. (Id., Ex. 1) In its Minutes, the Commission reports that posted scores from a promotional exam for a Civil Engineering Technician position were not calculated correctly and had not been standardized. (Id.) However, Ngo offers no evidence that there were similar problems with the exam for the Chemist position. Moreover, Ngo has not presented any evidence that she confronted the City with her suspicions or appealed the results of the exam. Therefore, Ngo has not shown that Defendants' proffered reason for failing to promote her to the position of Chemist were pretextual.

Ngo also maintains that she was eligible to be promoted to the position of Laboratory Technician III. (Ngo Aff. ¶ 15) On September 28, 1999, Ngo took the exam for this position, and the scores were approved and posted on October 18, 1999. (Id., Ex. 2) Ngo placed third out of the five applicants who took the exam. (Id.) This eligibility list expired on October 17, 2001. Ngo states that the two applicants who tested above her - Kathy Gordon-Jackson and Deborah Newman - were promoted to Lab Tech III positions. (Id. ¶ 15) Ngo explains that as of March 28, 2001, she was next Lab Tech II to be promoted to the Lab Tech III position. (Id.) Ngo states that Beverly Head intentionally

waited until the eligibility list expired in order to promote a Lab Tech III employee to a Chemist's position. (Id.) Ngo explains that this promotion would have opened a Lab Tech III position, which could have been filled by her. (Id. at ¶ 16)

Defendants explain that Ngo was not promoted to the Lab Tech III position because the Wastewater Treatment Division opted to fill the position with a lateral transfer of a Lab Tech III from another division, rather than make a promotional appointment. (Head Aff. ¶ 12)[10] Defendants explain that this transfer is in accordance with the terms of the Labor-Management Agreement. (Id.) Moreover, Defendants explain that this position was filled by Louise Schramm, a female; and occurred after the expiration of the eligibility list on October 17, 2001. (Id. at ¶ 18)

Ngo has made no effort to prove that Defendants' basis for not promoting her to a Lab Tech III position is pretext for discrimination. Ngo's arguments are based solely on the allegation that Head intentionally delayed promoting a Lab Tech III employee to a Chemist's position until after the eligibility list expired. Unsupported speculation cannot form the basis for demonstrating pretext. *See Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 623 (6th Cir. 2003).[11]

Therefore, even if it is assumed that Ngo has made out a *prima facie* case of discrimination; and construing the evidence and all reasonable inferences in a light most

---

[10]Defendants state that the position in the Industrial Waste Division was then eliminated as a cost-cutting measure. (Head Aff. ¶ 15-16) Defendants explain that this decision to eliminate the position was made by prior management several years earlier. (Id.)

[11]It should be noted that in her Amended Complaint, Ngo alleged that available positions were filled by Caucasian and/or male employees through a policy of using "Exceptional Appointments." Ngo apparently abandoned this theory, as it was not raised in her deposition or in her Response to Defendants' Motion for Summary Judgment; nor was there any evidence of this practice or policy in the record.

favorable to Ngo, Ngo has not demonstrated a genuine issue of material fact on the question of pretext.  Accordingly, Defendants are entitled to summary judgment on Ngo's Title VII claim against the City.

> ### 2.    *Section 1983 claim against the City.*

As discussed above, "the showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section § 1983." *Smith v. Salem, Ohio*, 378 F.3d 566, 577 (6th Cir. 2004), *citing*, *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir.1988).  Because Ngo has not made a sufficient showing to establish a disparate treatment claim under Title VII, she is necessarily unable to establish a violation of section 1983.  Therefore, Defendants are entitled to summary judgment on Ngo's section 1983 claim against the City.

> ### 3.    *ADEA claim against the City.*

The Age Discrimination in Employment Act ("ADEA") prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a).  The *McDonnell Douglas* burden-shifting framework for circumstantial-evidence cases has been applied in the context of claims brought under the ADEA.  *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).

Ngo has not presented any direct evidence of age discrimination.  In order to establish a *prima facie* case of age discrimination using circumstantial evidence under the *McDonnell Douglas* framework, a plaintiff must show that: (1) he or she is a member of the protected class, that is, he or she is at least forty years of age; (2) he or she was subjected to an adverse employment action; (3) he or she was qualified for the position; and (4) he

or she was treated differently from similarly situated employees outside the protected class. *Mitchell v. Vanderbilt University*, 389 F.3d 177, 181 (6th Cir. 2004). For all the same reasons stated above, Ngo's allegations of being disciplined for having plants at work, being marked AWOL, not getting new computer equipment, and having a lower performance appraisal, do not rise to the level of an adverse employment action. Likewise, Ngo has not brought forth any evidence that the City's proffered reason for not promoting her to either the Chemist or Lab Tech III position is pretext for age discrimination.

While it is not raised in her Response to Defendants' Motion for Summary Judgment, Ngo testified that Dennis Madden came to her lab and asked her when she would retire. (Ngo Depo. at 82) Defendants explain that Madden is not Ngo's supervisor, had no authority to make any decisions regarding Ngo's employment; and was questioning Ngo's plans in order to determine future staffing levels and budget costs. (Head Aff. ¶¶ 19-20) This Court finds that Madden's comment cannot support Ngo's claim of age discrimination. While "[a]ge-related comments referring directly to the worker may support an inference of age discrimination . . . isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination. *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025-26 (6th Cir. 1993) (citations omitted). Not only is Madden's question ambiguous, there is nothing in the record which would indicate that Madden's question was anything more than an isolated comment by a non-supervisory peer. Accordingly, Defendants are entitled to summary judgment on Ngo's Title VII claim against the City.

4.    *Ohio Rev. Code §§ 4112.02, 4112.14 and 4112.99 claims against the City and Defendant Head.*

As stated above, "federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981). Likewise, this Court may rely on cases interpreting the ADEA in its analysis of Ngo's state law claim. *Williams v. General Elec. Co.*, 269 F.Supp.2d 958, 966 (S.D. Ohio 2003), *citing, City of Columbus Civil Serv. Comm'n v. McGlone*, 697 N.E.2d 204, 206-07 (Ohio 1998); *Cochran v. Columbia Gas of Ohio, Inc.*, 742 N.E.2d 734, 738 (Ohio 2000). Based on the analysis of Ngo's claims under Title VII and the ADEA, Defendants are also entitled to summary judgment on Ngo's claims under Ohio law.

5.    *Retaliation claims based on events occurring after August 10, 2000.*

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) he or she engaged in an activity protected by Title VII; (2) the defendant knew he or she engaged in this protected activity; (3) thereafter, the defendant took an employment action adverse to him or her; and (4) there was a causal connection between the protected activity and the adverse employment action. *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004).

Ngo has presented absolutely no evidence of adverse action subsequent to the filing of her EEOC complaint on August 10, 2000. To the contrary, it appears that Ngo has received better treatment since she filed her complaint. In her deposition on December 8, 2004, Ngo testified that her immediate supervisor Tara Williams, and Defendant Beverly

Head now have a "better attitude." (Ngo Depo. at 62)  Ngo also stated that after her charge of discrimination was filed, her printer was replaced. (Id. at 68)

Accordingly, Defendants are entitled to summary judgment on Ngo's claims of retaliation under federal and state law.

Based on the foregoing, Defendants' Motion to Dismiss (Doc. 24) is **GRANTED** in part and **DENIED** in part; and Defendants' Motion for Summary Judgment (Doc. 39) is **GRANTED** on Plaintiff's remaining claims.  It is hereby ordered that Plaintiff's Complaint be **DISMISSED** with prejudice and stricken from the docket of this Court.

**IT IS SO ORDERED.**

Michael H. Watson, Judge
United States District Court